THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MÁXIMO RUIDÍAZ PASTRANA, Defendant and Appellant.

No. CR-63-29.        Decided October 16, 1963.

*Benicio Sánchez Castaño* for appellant. *J. B. Fernández Badillo,
Solicitor General,* and *J. F. Rodríguez Rivera, Assistant
Solicitor General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of
Division, Mr. Justice Hernández Matos, and Mr. Justice
Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The prosecuting attorney of the Superior Court of Puerto
Rico, San Juan Part, filed an information against appellant
for a subsequent offense of adulteration of milk, because on
April 18, 1960 he "illegally, voluntarily and maliciously had
and offered for sale as pure, for human consumption, cow
milk artificially adulterated with water." The trial court
found defendant-appellant guilty and ordered him to serve
six months in jail.

On appeal, the following errors are assigned: (1) The
trial judge erred in deciding that the milk submitted to a
test was adulterated; (2) the trial judge erred in finding

defendant-appellant guilty of the offense charged against him notwithstanding the insufficiency of the evidence.

1—In relation to the adulteration, appellant's contention is as follows:

Section 792–13 of Regulation No. 8 of the Secretary of Health—24 R.&R.P.R., p. 97—provides:

"All milk shall be considered adulterated if the following analytical facts appear:

(1) In the acetic serum:

(A) A quantity less than 0.715 gram of mineral matter for each 100 cc. and at the same time.

(B) A cipher less than 39.0 in the reading of the immersion refractometer at 20° C.

(2) In the acid serum of natural sour milk:

(A) A quantity less than 0.73 gram of mineral matter for each 100 cc. and at the same time.

(B) A cipher less than 38.3 in the reading of the immersion refractometer at 20° C.

(3) (A) A quantity less than that mentioned for mineral matter in the acetic serum or acid serum of natural sour milk in paragraphs (1) and (2) of this section and at the same time.

(B) A cipher less than 36.0 in the reading of copper serum in the immersion refractometer at 20° C."

■ Therefore, according to said Regulations, milk is considered adulterated if the analytical facts indicated in subdivisions (1), (2) and (3) of § 792–13 are present. Said construction is incorrect.

■ Subdivisions (1), (2) and (3) of the Regulations provide three different methods to test the adulteration of milk and it suffices that the analytical facts of any of them be established to consider the adulteration an established fact through expert testimony, and in case it is not satisfactorily challenged, conclusive evidence: *People* v. *Velázquez et al.*, 35 P.R.R. 548, 549–550 (Franco Soto) (1926). If the section of the Regulations were construed as sought by appellant, said Regulations would be contrary to the

provisions of the Act establishing the offense and it could not prevail.

2—As to the insufficiency of the evidence we believe appellant is right. Subsequent to the amendment introduced by Act No. 77 of June 17, 1955 to the Act which punishes the adulteration of milk, § 1 of said Act, which defines the offense, says:

"Section 1.—Every person who adulterates or dilutes milk and every person who sells, offers, or keeps for sale milk so adulterated or diluted, or who transports or stores such milk to be used for human consumption or for the purpose of submitting it to the process of pasteurization or any other process preparatory for human consumption, and every person using adulterated or diluted milk for industrial purposes, when such milk is to be used in the preparation of food for human consumption, shall be guilty of a misdemeanor and, upon conviction thereof, punished, for the first offense, by a fine of not less than twenty-five (25) nor more than one hundred (100) dollars. Recidivism shall be punished by confinement in jail for not less than six months nor more than one year, by a fine of five hundred (500) dollars, and by the revocation of the license."

In this case, defendant-appellant was charged with having and offering for sale for human consumption adulterated cow milk. The sole witness who attempts to connect defendant with the commission of the offense is Ramón López Collazo and his testimony did not go beyond a mere official identification.

"PROSECUTING ATTORNEY BAUZÁ:
Q—Your name?
A—Ramón López Collazo.
Q—What is your position?
A—Health Inspector.
Q—Where were you working on April 18, 1960?
A—In Loíza.

MR. SÁNCHEZ:
I accept all of that.

PROSECUTING ATTORNEY BAUZÁ:

Do you accept that on April 18, 1960 he took a sample in Máximo Ruidíaz Pastrana's dairy?

MR. SÁNCHEZ:

And that it was sent to the Department of Health. One of the bottles was given to him and the other to the Department of Health, and that was the number. I do not want to argue.

PROSECUTING ATTORNEY BAUZÁ:

Do you admit all that the information states?

MR. SÁNCHEZ:

I admit that this gentleman took the sample and sent it to the laboratory on the date alleged in the information.

PROSECUTING ATTORNEY BAUZÁ:

Do you admit that he had adulterated milk for sale and for human consumption?

MR. SÁNCHEZ:

No.

PROSECUTING ATTORNEY BAUZÁ:

Do you admit what the rest of the information says, that is, the subsequent offense?

MR. SÁNCHEZ:

Yes, sir.

PROSECUTING ATTORNEY BAUZÁ:

Let us call the chemist to the witness stand.

MR. SÁNCHEZ:

I admit the extraordinary ability of the person on the witness stand.

HON. JUDGE FRANK:

We gain more time without admitting anything."

■ As it is clearly seen, in the active play of the admissions there remains hanging in the air the real criminal act: Whether or not appellant had adulterated milk for sale and for human consumption. A second attempt of the prosecuting attorney to obtain a specific admission as to the real criminal act has the same negative result of the first attempt. (Tr.

Ev. 9 *in fine*.) This being so, the defendant is found not guilty.